## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 5335 | DATE | July 30, 2004 |
| CASE TITLE | Gerhard Von Der Ruhr  v  Immtech International | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOJune 14, 2004CKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing set for 8/31/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss is denied.
Defendants' answer to the complaint is due by 8/20/04.
Joint status report is due by 8/23/04.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | AUG 0 2 2004 | |
| | Notified counsel by telephone. | | date docketed | 21 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| GDS | courtroom deputy's initials | 2004 JUL 30 PM 4:04 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERHARD VON DER RUHR and MARK VON DER RUHR, individuals, and SEPTECH, INC., a Nevada corporation, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 03 C 5335<br>) |
| | ) Judge Robert W. Gettleman |
| IMMTECH INTERNATIONAL, INC., T. STEPHEN THOMPSON, GARY C. PARKS, and ERIK L. SORKIN, | )<br>)<br>)<br>) |
| Defendants. | ) |

DOCKETED
AUG 0 2 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gerhard Von Der Ruhr ("GVDR") and Mark Von Der Ruhr ("MVDR") seek damages against defendant Immtech International, Inc. ("Immtech"), for its alleged refusal to fulfill the duties of a lock-up agreement and option contracts with plaintiffs regarding the sale and purchase of shares of Immtech stock. Additionally, plaintiffs seek damages against defendants T. Stephen Thompson, Gary C. Parks, and Eric L. Sorkin for tortiously interfering with the option contracts. Finally, plaintiff SepTech, Inc. ("SepTech") seeks damages against Immtech for refusing to honor the licensing agreement of Immtech's mCRP technology. Specifically, plaintiffs assert the following claims: (1) breach of lock-up agreement (Count I); (2) breach of option agreement ending May 1, 2001 (Count II); (3) breach of option agreement ending April 14, 2002 (Count III); (4) tortious interference with contract by Thompson, Parks, and Sorkin (Count IV); and (5) breach of license (Count V). Defendants have moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion to dismiss is denied.

## FACTS[1]

Defendant Immtech is a biopharmaceutical company focused on the discovery and commercialization of therapeutic treatments for patients afflicted with opportunistic infectious diseases, cancer or compromised immune systems. Plaintiff GVDR was a founder of Immtech and former Chairman of the Board, and is a shareholder of Immtech stock and holds various stock options. Plaintiff MVDR is GVDR's son and also an Immtech shareholder.

In anticipation of the initial public offering ("IPO") of Immtech stock, GVDR entered into a lock-up agreement with defendants on March 29, 1999. Under this agreement, MVDR acquired 87,000 shares of Immtech, subject to the lock-up agreement. Pursuant to the agreement, GVDR and MVDR were not entitled to sell stock "until the later of, (1) the first anniversary of the IPO closing date, and (2) the end of the first twenty consecutive trading days during which the average of the closing bid and the asked price of the stock exceeded 200% of the per share price at which the common stock was initially offered to the public." Further, notwithstanding the lock-up agreement, plaintiffs could sell 20,000 shares at any time after 180 days past the closing date, and an additional 20,000 shares any time after the first anniversary of the closing date.

GVDR tried to sell a portion of his shares in May 2000, after both conditions of the lock-up agreement had been satisfied. More than a year had passed since the April 27, 1999, IPO, and the closing bid of Immtech's Common Stock price had exceeded 200% of the price per share at which the Common stock was initially offered to the public for more than twenty consecutive

---

[1] The facts recited herein are those alleged in the complaint which, for purposes of this Rule 12(b)(6) motion, the court accepts as true. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996).

2

days between September 24, 1999, and April 12, 2000. Defendants refused by letter dated May 5, 2000, to remove the legends from the certificates of common stock held by GVDR and MVDR, thereby preventing GVDR from selling shares of Immtech stock. The May 5, 2000, letter stated that Criticare Systems, Inc. ("Criticare") members, (including GVDR and MVDR) should agree not to sell more than 10,000 shares a quarter for the following three years. Absent the removal of the legends, plaintiffs are unable to sell their Immtech stock.

Consistent with the representations in Immtech's registration statement under the Securities Act of 1933 ("SB-2/A"), on April 26, 2001, GVDR sent a check for $8,292.60 to exercise an option expiring on May 1, 2001, to purchase 24,390 shares of Immtech Common Stock at $0.34 per share. After two inquiries were sent to defendant Parks on June 1, 2001, and June 7, 2001, GVDR received a letter from Parks returning the check, requesting clarification regarding which option was being exercised, and stating that the correct price according to the May 1, 1991, option agreement was $8,399.72. This refusal has precluded GVDR from realizing a gain of $750,000.

On February 12, 2002, GVDR, again invoking the representations in the SB-2/A, sent a check for $2,665.26 in an attempt to exercise an option to purchase 7,839 shares of Immtech Common Stock at $0.34 per share. In a February 20, 2002, letter, however, defendant Parks informed GVDR that the Stock Option Agreement dated April 14, 1992, had lapsed. The failure to honor the option agreement has prevented plaintiff from realizing a gain of $240,000.

Plaintiffs GVDR and MVDR allege that defendants Thompson, Parks, and Sorkin individually and in concert, tortiously interfered with GVDR's and MVDR's contracts with Immtech. Plaintiffs contend that these individual defendants were not privileged to cause such a

breach. In addition, plaintiffs allege that the rationale for defendants' actions was either to reduce the number of outstanding shares and thus increase the value of defendants' holdings, or to maliciously harm plaintiffs.

On June 29, 1998, Criticare entered into an "International Patent, Know-How, and Technology License Agreement" with Immtech to utilize modified mCRP for the treatment of sepsis. Criticare assigned to GVDR the license obtained under the patent. Those rights were eventually assigned to plaintiff SepTech, a corporation founded by GVDR. Plaintiff SepTech alleges that defendants breached the license agreement by refusing to comply with its terms. Defendants did not make available the requisite modified mCRP technology, or access to Dr. Potempa (to whom the patent was issued). Immtech advised plaintiffs in September 1999, that mCRP was not commercially available and would cost $1.7 million to prepare for clinical trials. Defendants' non-performance of the license agreement continued. The breach of the license agreement prevented GVDR and SepTech from entering the worldwide market for sepsis treatment. SepTech alleges that as an early stage developer, it stands to lose up to $80,000,000 annually in licensing revenue.

## DISCUSSION

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the factual allegations as true and draws all reasonable inferences favorable to the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Nonetheless, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).

The pleading requirements under Fed. R. Civ. P. 8(a)(2) necessitate only "a short and plain statement showing the plaintiff is entitled to relief, the purpose of which is to give the defendant notice of the claims and the grounds they rest upon." Thompson, 300 F.3d at 753.

1. Breach of Lock-up Agreement:

To plead a breach of contract claim under Illinois law, "a plaintiff must make allegations raising an inference that : (1) a contract with definite and certain terms existed between the parties; (2) the plaintiff performed its obligations under the contract; (3) the defendant breached its obligations under the contract; and (4) the plaintiff suffered damages as a result." Hoopla Sports & Entm't, Inc. v. Nike, Inc., 947 F. Supp. 347, 356 (N.D.Ill. 1996).

Defendants move to dismiss Count I, arguing that plaintiffs have not pled that both conditions precedent had been met prior to plaintiffs' attempt to exercise the option in May 2000. Defendants' argument stems from paragraph 14 of the amended complaint, which alleges that the conditions were met as of April 27, 2001. This allegation obviously contains a typographical error and was intended to read April 27, 2000. This is demonstrated by paragraphs 12 and 15, which allege the satisfaction of both conditions precedent. Paragraph 12 alleges that by May 2000, a year had passed since the March 29, 1999, IPO; and between September 24, 1999, and

April 12, 2000, more than twenty consecutive passed during which the closing bid and the asked price of the stock exceeded 200% of the per share price at which the Common Stock was initially offered to the public. Although plaintiffs' complaint, amended complaint, and brief are inexcusably replete with typographical errors, the breach of the lock-up agreement is adequately pled. To suggest otherwise is a waste of resources. This court denies defendants' motion to dismiss Count I.[2]

2.  Breach of Option Agreements Expiring May 1, 2001 and April 14, 2002

In Counts II and III, plaintiffs allege the violation of option agreements set to expire on May 1, 2001, and April 14, 2002, respectively, according to terms in the SB-2/A. Defendants move to dismiss Counts II and III, arguing that plaintiffs failed to exercise the options to purchase shares in strict accordance with their terms. Specifically, defendants argue that under Illinois law, "the exercise of an option is ineffective where the purported exercise of it varies in any way the terms of the option agreement." MXL Indus., Inc. v. Mulder, 623 N.E.2d 369, 376 (Ill. App. Ct. 1993). To demonstrate their point, defendants have submitted two option agreements dated May 1, 1991, and April 14, 1992, between GVDR and Immtech, and argue that the court can consider these documents under Venture Associates, because "they are referred to in the Amended Complaint and are central to Plaintiffs' claims." (Defendants' Motion to Dismiss, p.8, n.3). The court disagrees. The complaint makes no mention of the documents submitted by defendants, but rather alleges the agreements as stated in the SB-2/A. Under Venture Associates, defendants could submit and the court can consider the SB-2A, but not a

---

[2]The amended complaint is deemed amended on its face to correct the typographical error mentioned above.

separate contract that would support defendants' defense. Therefore, plaintiffs sufficiently plead the breach of an option agreement, the terms of which are set forth in the SB-2/A registration statement.

3. Tortious Interference with Contract

Defendants move to dismiss Count IV, arguing that plaintiffs fail to allege a breach of contract and fail to allege tortious conduct by defendants. Under Illinois law, the elements of tortious interference with contract are: (1) the existence of a valid contract between plaintiff and another; (2) the defendants' awareness of this contract; (3) defendants' intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendants' wrongful conduct; and (5) damages. HPI Heath Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 676 (Ill. 1989). Additionally, Illinois law provides a conditional privilege allowing corporate officers and directors to influence the actions of the corporation in good faith. Swager v. Couri, 395 N.E.2d 921, 927 (Ill. 1979). "To be tortious, a corporate officer's inducement of his corporation's breach of contract must be done without justification or maliciously." Id.

First, defendants argue that plaintiffs do not identify any actionable breach of contract. As held above, the court disagrees. The more fundamental dispute between the parties addresses the third element of tortious interference with contract; defendants argue that plaintiffs' action as corporate officers were justified. Plaintiffs do, however, allege that plaintiffs acted "beyond the scope of their authority and for their own interests," and that defendants caused the breach to reduce the number of outstanding shares of stock and thereby increase the value of their own holdings. Further, plaintiffs allege that defendants maliciously caused the breach. This satisfies

7

the requirement that "where the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." HPI, 395 N.E.2d at 677. With our without the protected privilege, plaintiffs sufficiently plead the elements of tortious interference with contract. Therefore, the court denies defendants' motion to dismiss Count IV.

4.  Breach of License

Defendants move to dismiss Count V, arguing that there is no breach of the license agreement, both because the terms as stated in the complaint do not exist, and because the conditions precedent of the agreement were not satisfied.

Based on the terms of the license agreement, plaintiffs adequately pled breach of license. The terms of the license agreement provide that defendants "will make Immtech Technology available to Criticare" within thirty days after the effective date of the agreement, June 29, 1998. Additionally, the license provides the right for Criticare to sublicense others, and assign any right granted in the agreement. As defined in the agreement, "technology" includes any information "reasonably necessary...to manufacture, customize, use, market or sell Products, and includes dimensions, materials, processes and procedures relating thereto." Further, "technology" includes information reasonably deemed "useful in utilizing Know-how or Immtech Patent Rights." The complaint alleges that "by August, 24, 1999, the modified mCRP, the technology and the services of Dr. Potempa had not been made available to Criticare, GVDR, or SepTech, contrary to the implicit and explicit terms of the June 1998 Agreement." Failure to make the technology above available would be in direct violation of the agreement.

Even accepting defendants' obligations as alleged, defendants argue that plaintiffs failed to satisfy the conditions precedent of the agreement. Specifically, defendants argue that the agreement required plaintiffs to raise $500,000 within twelve months after the agreement. The agreement states in relevant part:

> Criticare or its assignee agrees that it will utilize its best efforts to raise not less than $500,000 within 12 months after the date of this Agreement to fund the development and commercialization of a product utilizing mCRP for treatment of sepsis. In the event that Criticare fails to complete such financing, Immtech shall have 90 days within which to repurchase the mCRP Patent Rights, mCRP Technology and any Improvements for their appraisal value.

The language of the agreement, however, does not suggest this was a condition precedent. Only "best efforts" were required, and defendants had the right to repurchase the technology in case funding was not acquired. Whether plaintiffs or Immtech performed their respective obligations under the license agreement cannot be resolved at the pleading stage. Because the complaint adequately alleges a breach of the agreement, the court denies defendants' motion to dismiss Count V.

## CONCLUSION

For the reasons stated herein, defendant's motion to dismiss is denied. Defendants are ordered to answer the complaint on or before August 20, 2004. The parties are directed to prepare and file a Joint Status Report using the court's standard form on or before August 23, 2004, and to appear for a status conference on August 31, 2004, at 9:00 a.m.

**ENTER:** July 30, 2004

Robert W. Gettleman
United States District Judge