IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERHARD VON DER RUHR, and MARK VON DER RUHR, individuals and SEPTECH, INC., a Nevada corporation,<br><br>Plaintiffs<br><br>v.<br><br>IMMTECH INTERNATIONAL, INC., T. STEPHEN THOMPSON, GARY C. PARKS, and ERIC L. SORKIN,<br><br>Defendants. | No. 03 C 5335<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gerhard Von Der Ruhr ("GVDR") and his son Mark ("MVDR"), and Septech, Inc., have brought a five count amended complaint against defendants Immtech International, Inc., T. Stephen Thompson, Gary C. Parks and Eric L. Sorkin. Counts I and II, brought by GVDR against Immtech seeks damages for a breach of a stock "lock-up" agreement, and a stock option agreement, respectively. Count III, also seeks damages on behalf of GVDR for breach of a separate stock option agreement allegedly expiring on April 14, 1992. In Count IV, both GVDR and MVDR charge Parks, Thompson and Sorkin with tortiously interfering with the VDRs' contracts with Immtech. Count V is brought by Septech and GVDR against Immtech for breach of a licence agreement. Defendants have moved for partial summary judgment on Counts III, IV and V. For the reasons set forth below the motion is granted in part and denied in part.

## FACTS

Defendant Immtech is a bio-pharmaceutical company focused on the discovery and commercialization of therapeutic treatments for patients afflicted with opportunistic infectious diseases, cancers or compromised immune systems. Plaintiff GVDR was a founder of Immtech and former Chairman of the Board. He is a shareholder of Immtech stock and holds various stock options. MVDR is GVDR's son and also an Immtech shareholder. Prior to an initial public offering of Immtech's stock, it financed operations through private placements of securities and cash contributions by shareholders. One of Immtech's major security holders was Criticare Systems, Inc. ("Criticare"), another company founded by GVDR. In a June 25, 1998, Letter Agreement (the "Letter Agreement"), Immtech agreed to sell to Criticare certain of Immtech's intangible assets. Under that agreement, Criticare paid $150,000 to Immtech in exchange of 86,207 shares of Immtech stock and, among other things not related to the instant action, an exclusive royalty free worldwide license for patent no. 5,404,832 (granted to Immtech employee Dr. Lawrence Potempa) to utilize mCRP for the treatment of septicema as set forth in a separate license agreement ("the License Agreement") attached to the Letter Agreement. mCRP is a blood protein which increases the body's ability to resist a variety of diseases.

Under the terms of the Letter Agreement, Criticare was to receive the right to Potempa's services in the development of mCRP, and the right to purchase mCRP from Immtech at cost. The Letter Agreement provided that it "shall not be assignable by either party without prior written consent of the other." The License Agreement also provided that it "may not be assigned, in whole or in part, by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld."

2

In November 1998 GVDR resigned as President and Chairman of the Board of Criticare. Under his severance agreement, GVDR received the right to purchase from Criticare the shares of Immtech stock and the mCRP technology received by Criticare from Immtech pursuant to the Letter Agreement. GVDR gave the shares of Immtech stock to MVDR.

In late 1998 and early 1999 Immtech contemplated an initial public offering ("IPO") to raise funds. Immtech requested that both GVDR and MVDR enter into long term lock-up agreements that would restrict their ability to sell their shares after the IPO. GVDR objected and on March 13, 1999, resigned as Chairman of Immtech. Ultimately both GVDR and MVDR each signed a modified lock-up agreement dated March 29, 1999.

In June 1999, pursuant to his severance agreement with Criticare, GVDR arranged for Criticare to assign the rights to the mCRP technology to Septech, a company he founded to commercialize the septice technology.

## DISCUSSION

### Count III

In Count III, GVDR alleges that Immtech breached an option agreement "ending on April 14, 2002." GVDR attempted to exercise that option on May 12, 2002, to purchase 7,839 shares at $.34 per share by sending a check for $2,605.26. On February 20, 2002, defendant Parks, Immtech's CFO, informed GVDR that he had failed to exercise the option by the September 27, 2001, expiration date. As explained in this court's earlier opinion denying defendants' motion to dismiss Count III, the complaint is careful to avoid pleading the existence of an actual written option agreement, instead alleging a breach of an agreement as set forth in a footnote in Immtech's registration statement under the Securities Act of 1933 (the "SB-2/A").

3

Von Der Ruhr v. Immtech, Inc., 326 F. Supp.2d 922, 926-27 (N.D. Ill. 2004). Because the complaint did not reference the actual written contract, the court could not consider, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the actual contract submitted by defendants in support of their motion. Id.

The court can, of course, consider the written contract in deciding the current motion for summary judgment. Fed. R. Civ. P. 56. The actual option agreement at issue in Count III was granted to GVDR by Immtech's Board of Directors on September 27, 1991, and memorialized in a written contract dated April 14, 1992. That agreement specifically provides:

> This Option, or any portion thereof, must be exercised within ten (10) years of the date of grant (September 27, 1991), or it shall lapse.

It is undisputed that GVDR did not attempt to exercise the option until February 12, 2002, over four months after the option lapsed by its own terms. It is also undisputed that GVDR possessed the agreement, knew what it said, and knew that the footnote in the SB-2/A was inconsistent with the explicit terms of that agreement. There is also evidence in the record that GVDR was advised in advance of the expiration date in writing that the option expired on September 27, 2001.

Unable to dispute the indisputable, GVDR argues that the written option agreement is ambiguous because, due to various corporate actions, the number and price of the shares subject to the option was reduced. Even if GVDR is correct, any ambiguity created would concern the number of shares and price only, not the expiration date, the agreement clearly and unambiguously sets forth. An unequivocal statement that is not contradicted by any other provision in the contract cannot be deemed ambiguous. Miller & Co. v. China Nat'l Minerals

4

Import and Export Corp., 1991 WL 171268 at *7 (N.D. Ill. 1991) (quoting Lyons Savings & Loan Association v. Geode Co., 641 F. Supp. 1313, 1332 (N.D. Ill. 1986). Accordingly, summary judgment is granted to defendant Immtech on Count III.

**Count IV**

In Count IV, GVDR and MVDR allege that defendants Parks, Thompson and Sorkin tortiously interfered with the lock-up agreement and other option agreements. Because Parks, Thompson and Sorkin were all corporate officers and/or directors of Immtech, their conduct is privileged unless unjustified or malicious. George A. Fuller Co. v. Chicago College of Osteopathic Medicine, 719 F.2d 1326, 1330 (7th Cir. 1980). To overcome this privilege, plaintiffs must establish that these defendants induced the breach "to further their personal goals or injure the other party to the contract, and acted contrary to the best interest of the corporation." Id. at 1333 (emphasis in original). Defendants argue that plaintiffs have no evidence to support a claim that they acted to further their own goals or injure plaintiffs, or that any of their actions were contrary to the best interest of the company. Plaintiffs respond, however, that these defendants' actions in refusing to honor the agreements, instructing Dr. Potempa to refuse to respond to GVDR's request for help and refusing to remove restrictive legends on the stock until April 26, 2004, were done in retaliation for GVDR's decision to resign from the board in lieu of supporting a long term lock-up agreement to which these defendants had already committed.

Although plaintiffs' evidence is slim, particularly as to whether these defendants' actions were not in the best interest of the corporation, it is nonetheless sufficient to defeat summary judgment. There is some evidence that defendants were acting with malice toward GVDR as a result of his unwillingness to go along with their plans and his decision to resign from the board

immediately prior to the IPO. On summary judgment the court must read all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). This standard is applied with added rigor where issues of motive and intent are involved. See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). Accordingly, defendants' motion for summary judgment on Count IV is denied.[1]

## Count V

In Count V, Septech alleges that Immtech breached the June 1998 License Agreement between Immtech and Criticare, which was assigned by Criticare to Septech. There were actually two June 1998 agreements relating to mCRP for septice between Immtech and Criticare. The first, the License Agreement, was titled "International Patent Know-How and Technology License Agreement" and related strictly to the use of mCRP for the treatment of sepsis. The second is the more comprehensive Letter Agreement dated June 25, 1998, executed on June 29, 1998, with a closing date of July 2, 1998, by which Immtech transferred the various technology licenses including the License Agreement, among other things, to Criticare. Under the Letter Agreement Immtech committed itself to make Dr. Potempa available to Criticare for three years for the development and use of mCRP technology for the treatment of sepsis, and made a five year commitment to sell mCRP to Criticare at Immtech's cost. The Letter Agreement specifically attaches and incorporates the License Agreement.

GVDR claims that he resigned as President of Criticare in November 1998. Pursuant to a severance agreement, GVDR received the right to purchase Criticare's Immtech stock and the

---

[1] Of course, defendants cannot be liable for interfering with the April 14, 1992, option agreement that GVDR failed to exercise timely.

mCRP septice technology received by Criticare pursuant to the Letter Agreement. On June 14, 1999, Criticare executed an assignment agreement, purporting to assign to Septech all of Criticare's rights under the Letter Agreement, which was incorporated and attached and which itself incorporated and attached the License Agreement.

Septech alleges that Immtech breached the Letter Agreement by not making available to it the modified mCRP, and the technology and services of Dr. Potempa. Immtech has moved for summary judgment arguing that any purported assignment of rights under the Letter Agreement is invalid for failure to obtain Immtech's prior written approval.

Paragraph 11 of the Letter Agreement specifically provides:

This Letter Agreement shall be binding upon in and/or to the benefit of the parties' successors and assignees, but shall not be assignable by either party without the prior written consent of the other; provided, however, that nothing herein shall prevent Criticare from assigning its rights and obligations hereunder to an affiliated corporation or subsidiary corporation controlled by or under common control with Criticare.

The License Agreement had a similar provision, but also provides that the prior written consent of the other party shall not be unreasonably withheld.

It is undisputed that Criticare did not receive written consent from Immtech prior to assigning the rights under the two agreements to Septech. It is also undisputed, however, that Immtech was aware of the attempted assignments. It had a copy of the assignment documents in its files, and there is evidence in the record that by the Fall of 1999 GVDR, on behalf of Septech, was attempting to arrange for Dr. Potempa's assistance as required by the two agreements. Despite these repeated requests, Immtech, instead of indicating that any purported assignment was invalid, apparently simply remained silent. Indeed, the record reflects that internally at least,

7

Immtech believed that Criticare had no rights under the agreements (and thus could assign no rights) because Criticare had failed to fulfill what Immtech thought was a condition precedent, a position rejected by this court in its earlier opinion. Von Der Ruhr, 326 F. Supp.2d at 927-28. Finally, on September 8, 1999, GVDR's lawyer wrote to Immtech, specifically indicating that the Letter Agreement had been assigned by Criticare to GVDR, and objecting to Immtech's refusal to honor the agreements. Again, Immtech apparently chose to remain silent rather than responding that the assignment was invalid.

Whether Immtech actually remained silent and, if so, whether that silence constituted an acceptance of the assignment, see First National Bank v. Atlantic Tele-Network Co., 946 F.2d 516, 519 (7th Cir. 1991), or whether, as plaintiffs argue, Immtech's silence is a breach of its covenant of good faith and fair dealing, see Prudential Insurance Company of America v. McCurray, 143 Ill.App.3d 222 (3rd Dist. 1986), are issues not properly adjudicated on summary judgment. Accordingly, defendants' motion for summary judgment on Count V is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted as to Count III and denied as to Counts IV and V. This matter is set for a report on status on September 13, 2005, at 9:00 a.m..

**ENTER:** **August 29, 2005**

Robert W. Gettleman
United States District Judge

8